# Exhibit "1"
# to Plaintiff's First Amended Complaint

## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| **D2K, INC., d/b/a Suzuki** ) | |
| **of Huntsville, SHOALS SUZUKI,** ) | |
| **INC., VARSITY SUZUKI, INC.,** ) | |
| **and GARY LINAM, an individual,** ) | |
| ) | |
| **Plaintiffs** ) | |
| ) | |
| **vs.** ) | **Civil Action No.:** |
| ) | |
| **AMERICAN SUZUKI MOTOR** ) | |
| **CORP., a California corporation,** ) | |
| ) | |
| **Defendant.** ) | |

## COMPLAINT

**COME NOW,** Plaintiffs D2K, Inc. d/b/a Suzuki of Huntsville, Shoals Suzuki, Inc., Varsity Suzuki, Inc., and Gary Linam, by and through their undersigned attorneys, and hereby file this Complaint against Defendant American Suzuki Motor Corp. As and for their Complaint, Plaintiffs state as follows:

## INTRODUCTION

1.     This civil action alleges Civil RICO (18 U.S.C. 1961(c)), multiple violations of the Alabama Motor Vehicle Franchise Act (Ala. Code §§ 8-20-1 *et seq.*), negligence and wantonness, and negligent and wanton supervision.

## PARTIES

2.     Plaintiffs D2K, Inc., d/b/a Huntsville Suzuki (hereinafter "Huntsville Suzuki"), Shoals Suzuki, Inc. (hereinafter "Shoals Suzuki"), and Varsity Suzuki, Inc. (hereinafter "Varsity Suzuki") (collectively referred to hereinafter as "Plaintiffs") are all Alabama corporations which, at all times relevant hereto, were engaged in the selling and servicing of Suzuki automobiles.

3.     Plaintiff Gary Linam (hereinafter "Linam") (also encompassed in any and all references to "Plaintiffs") is an individual over the age of nineteen (19) years who resides in Madison County, Alabama.  At all times relevant hereto, Linam was the sole owner of D2K, Inc., Shoals Suzuki, Inc., and Varsity Suzuki, Inc.

4.     Defendant American Suzuki Motor Corp. (hereinafter "ASMC") is a California corporation which, upon information and belief, is a wholly owned subsidiary of Suzuki Motor Corp. At all times relevant hereto, ASMC was engaged in marketing, selling, and distributing new Suzuki automobiles to Suzuki automobile dealers throughout the United States.

## JURISDICTION AND VENUE

5.     This matter is properly before the United States District Court pursuant to 28 U.S.C. § 1332, as diversity of citizenship exists between the Plaintiffs and the Defendant and the amount in controversy exceeds the minimum

jurisdictional threshold of the Court. Defendant ASMC has purposefully availed itself to the jurisdiction of the courts of this state by virtue of routinely conducting state-regulated business herein. Furthermore, a substantial part of the events and/or omissions giving rise to this action occurred in this judicial district.

### FACTUAL ALLEGATIONS

6.      In or about January 2004, Plaintiff Suzuki of Huntsville acquired and/or opened a Suzuki automobile dealership in Huntsville, Alabama. Subsequently, in 2006, Plaintiffs Shoals Suzuki and Varsity Suzuki each acquired and/or opened a Suzuki automobile dealership in the cities of Sheffield and Tupelo respectively.

7.      At all times relevant hereto, the stock of all three Plaintiff corporations was, and continues to be, wholly owned by Gary Linam, who served/serves as CEO of the three (3) dealerships.

8.      Initially, Plaintiffs' venture into selling Suzuki automobiles was extremely successful. In 2005, Suzuki of Huntsville was the number one Suzuki automobile dealer in America and was recognized for being the first Suzuki dealer in the United States to sell over two thousand automobiles in a given year.

9.      As Plaintiffs' sales grew, so did the compensation of ASMC's management who received financial incentives based upon the performance of Suzuki dealers such as Plaintiffs.

10.     Defendant ASMC's compensation plan was based on and/or included a so-called "stair step" incentive program which rewarded ASMC's management when certain sales benchmarks were reached.

11.     To ensure that Defendant ASMC met its stair step goals, the company devised a scheme whereby bogus sales of Suzuki automobiles could, and would, be attributed to various Suzuki dealerships. The practice of generating phony sales was rampant throughout ASMC and the company's management required ASMC's dealer body to participate in the false reporting of new vehicle sales.

12.     Defendant ASMC's plan to report artificial sales was carried out by it upper management, including Pat Murphy, ASMC's General Manager for the Southern Region.

13.     Because of Plaintiffs' status as top tier dealers, Defendant ASMC's management quickly targeted Plaintiffs in furtherance of its fraudulent sales plan. Defendant intended to accomplish its goal of inflating sales numbers by directly accessing Plaintiff's inventory electronically and marking unsold vehicles as having been sold or, alternatively, by requiring Plaintiffs' owner and CEO Linam to input such data into the system for them.

14.     For example, in or about August 2005, Barry Walters, Defendant ASMC's District Manager whose territory included north Alabama, telephoned Linam at his home at approximately 10:00 p.m. Central Standard Time and told

Linam that ASMC wanted Linam to return to the Huntsville dealership to generate fictitious sales before the 9:00 p.m. Pacific Standard Time deadline for an incentive program expired.

15. Initially, Linam refused Defendant ASMC's directive, but relented when he was told that ASMC's upper management, specifically Pat Murphy, had ordered such action to be taken.

16. Upon arriving at Plaintiff Huntsville of Suzuki, Linam discovered that, because of the late hour, he was not able to access Defendant ASMC's sales reporting system to input the data demanded by ASMC's upper management. Undeterred, ASMC's management told Linam to provide them (ASMC's management) with VIN numbers for approximately two dozen vehicles so that they could input the fraudulent data themselves from a computer terminal in California.

17. On repeated occasions during the period of 2005 through 2008, Defendant ASMC's management pressured Linam, as well as other Suzuki dealers, to generate phantom sales as incentive deadlines approached. Such edicts generally came from Pat Murphy via Barry Walters, both of whom, as previously noted, held management positions with ASMC. Believing he had no choice, Linam followed ASMC's instructions and, in many cases, absorbed the cars he was forced to mark as sold into the fleet of a car rental business he owned.

18.     Although dozens of vehicles were ultimately input into ASMC's sales reporting system as being sold by Plaintiffs, those automobiles remained in Plaintiffs' physical inventory where they continued to accumulate the costs of floor plan financing.

19.     The floor plan financing for all three Plaintiff dealerships was personally guaranteed by Plaintiff Linam.

20.     With the vehicles remaining in Plaintiffs' floor plan, where they appeared to be unsold, Plaintiffs' sales-to-inventory ratio ultimately reached a level that caused Plaintiffs' floor plan lender to place a financial hold on Plaintiffs' dealerships.

21.     Once Plaintiffs were placed on financial hold, Plaintiffs could no longer access the capital necessary to purchase new vehicle inventory.

22.     Executives as high up the management chain as ASMC's Vice President of Automotive Operations, Koichi Suzuki, were fully aware of, and approved, the fraudulent scheme being perpetrated by the company and its management.

23.     ASMC executive Jim Potter kept reports for Koichi Suzuki for several years detailing the discrepancy between ASMC's dealer retail delivery reporting and individual dealers' financial statements. Upon information and belief, the numbers derived from the dealer retail delivery reporting system were the ones

officially reported by ASMC's upper management back to its parent corporation, Suzuki Motor Corp., and not those from the dealers' financial statements, which showed the true sales figures for ASMC's dealer body.

24.     Koichi Suzuki allowed, and needed, Defendant ASMC's scheme to continue because he had overcommitted in ordering certain model Suzuki vehicles to be manufactured for sale in the American market and he wanted ASMC's management, himself included, to reap the financial rewards derived from the inflated sales figures.

25.     As the overabundance of vehicles arrived in America, Defendant ASMC forced automobiles upon its dealers, especially the Plaintiffs. ASMC was able to do so, at least in part, because it lacked an objective methodology for allocating new vehicles to its dealers.

26.     Concern over the lack of an allocation system had led Defendant ASMC's dealer council, of which Linam was a member for two years, to request on multiple occasions that ASMC address the issue. Although ASMC promised its dealers that the company would implement a new allocation system, and even went so far as to hire consultants to devise such a system, ASMC never followed through with the plan.

27.     Defendant ASMC's arbitrary and discriminatory method of allocating vehicles resulted in Plaintiffs having a poor mix of vehicle product and adversely

affected Plaintiffs' sales. In fact, Plaintiff Varsity Suzuki had to cease operations in 2008 due in part to ASMC's arbitrary and unfair forced delivery of unwanted and unpopular vehicles on the dealership during the prior year.

28.     Although Plaintiffs put forth their best efforts, the failure of Defendant ASMC to provide Plaintiffs with fast-selling Suzuki models such as the Reno and Forenza, combined with ASMC's fraudulent sales scheme and Plaintiffs' resulting inability to obtain floor plan financing, eventually caused Plaintiffs Suzuki of Huntsville and Shoals Suzuki to be unable to continue their vehicle sales operations.

29.     Despite the inability to continue selling new Suzuki vehicles, Plaintiffs intended to continue providing service and warranty work for Suzuki vehicles. Plaintiffs' attempt at doing so was quickly thwarted however when ASMC arbitrarily refused to continuing shipping parts to Plaintiffs on open account. Instead, ASMC decided it would only ship parts to Plaintiffs on a COD (cash on delivery) basis. ASMC did so even though the cost of the parts would normally have been negated at the end of the billing period by monies ASMC owed to Plaintiffs for warranty work Plaintiffs had performed.

30.     On or about March 24, 2009, Defendant ASMC sent Plaintiff Shoals Suzuki a "Notice of Intent to Terminate Dealer Agreement" letter. The letter stated that ASMC was terminating Shoals' dealership because "Shoals Suzuki has

abandoned its location and is no longer conducting dealership Sales and Service operations in accordance with the [Dealer] Agreement."

31. A similar "Notice of Intent to Terminate Dealer Agreement" letter was sent to Plaintiff Suzuki of Huntsville on or about March 25, 2009 setting forth the same reasons for terminating the Huntsville dealership.

32. Subsequently, upon learning that its termination of Plaintiffs' dealer agreements would make ASMC responsible under Alabama law for paying Plaintiffs the reasonable rental value of their dealership facilities for up to three years, ASMC amended its basis for terminating Plaintiffs' dealer agreement. In its "Amended Notice of Intent to Terminate Dealer Agreement", dated April 16, 2009, ASMC accuses Plaintiff Shoals Suzuki of having "falsely and intentionally reported to ASMC approximately 42 vehicles as sold to retail customers" and similarly accuses Suzuki of Huntsville of having "falsely and intentionally reported to ASMC approximately 31 vehicles as sold to retail customers".

33. ASMC's inclusion of language accusing Plaintiffs of fraudulent conduct was an overt attempt by ASMC to shirk its responsibilities under Alabama's Motor Vehicle Franchise Act.

34. After receiving ASMC's amended termination letters, Plaintiffs' then legal counsel sent correspondence to ASMC challenging ASMC's actions. In

response to the letter from Plaintiffs' counsel, ASMC withdrew its notices of termination, but has effectuated the same result by virtue of its actions.

35.     Although ASMC claimed that it had rescinded its Notice of Intent to Terminate Plaintiffs' Dealer Agreement, ASMC nonetheless awarded a dealer service point to Bentley Automotive Group in Huntsville, Alabama. By allowing a service point to be opened within Plaintiff Suzuki of Huntsville's relevant market area, ASMC violated the terms of the parties' Dealer Agreement.

36.     The arbitrary, bad faith, and unconscionable conduct of Defendant ASMC has caused detrimental and irreparable harm to Plaintiffs.

## COUNT ONE

### VIOLATIONS OF 18 U.S.C. 1962(c)
### (CIVIL RICO)

37.     Plaintiffs re-allege each and every allegation set forth above and incorporates same by reference, as if all were set forth fully herein.

38.     At all times relevant hereto, Defendant ASMC was, and continues to be, an "enterprise" as that term is defined by 18 U.S.C. § 1961(4).

39.     At all times relevant hereto, Defendant ASMC has engaged in, and continues to engage in, activities which affect interstate or foreign commerce. More specifically, the Defendant enterprise was, and continues to be, engaged in the marketing and distribution of new Suzuki automobiles to dealers such as Plaintiffs.

40.     Defendant ASMC has committed a predicate act necessary for establishing a RICO violation. Specifically, ASMC committed and/or conspired to commit wire fraud in violation of 18 U.S.C. § 1343 by devising and carrying out a scheme whereby ASMC transmitted and/or caused to be transmitted, via electronic communications, fraudulent sales data designed to increase the number of vehicles ASMC appeared to be selling in the U.S. market and to generate unearned bonus monies for ASMC's upper management.

41.     Defendant ASMC committed and/or conspired to commit said wire fraud on a continuing basis, thus ASMC's fraudulent activities constitute a "pattern of racketeering activity" as that phrase is defined by 18 U.S.C. §§ 1961(1) and (5).

42.     Defendant ASMC's commission of said acts are known to have occurred since 2005, and the threat of ASMC engaging in such criminal activity continues to exist.

43.     As a direct and proximate cause of Defendant ASMC's unlawful conduct, Plaintiffs have suffered injury to their business and/or property.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs demand judgment against Defendant ASMC in an amount of compensatory and punitive damages to be determined by a jury at trial of this cause, with any award of compensatory damages being duly trebled. Additionally, pursuant to 18 U.S.C. § 1964(c), Plaintiffs requests an award of attorney's fees and costs.

## COUNT TWO

## MISALLOCATION OF VEHICLES IN VIOLATION OF
## ALABAMA CODE § 8-20-4(3)(a)

44.     Plaintiffs re-allege each and every allegation set forth above and incorporates same by reference, as if all were set forth fully herein.

45.     Defendant ASMC is a "manufacturer" of motor vehicles as that term is defined within Alabama's Motor Vehicle Franchise Act, codified at Ala. Code § 8-20-1 *et seq.* and is therefore subject to the mandates of the Act.

46.     Pursuant to Alabama Code § 8-20-3(a), it is unlawful for a manufacturer of new vehicles to allocate its vehicles in a manner which is arbitrary, capricious, or unreasonably discriminatory.

47.     Defendant ASMC violated Alabama Code § 8-20-3(a) by virtue of using its "discretion" in allocating vehicles to Plaintiffs. ASMC's system of allocation was based upon an arbitrary and undefined methodology, and such decisions were arbitrarily made by ASMC's employees, agents, and/or representatives.

48.     Defendant ASMC's lack of an unbiased, objective methodology for allocating its automobiles among Suzuki dealers was arbitrary, capricious, and/or unreasonably discriminatory.

49.     Defendant ASMC's conduct is part of a larger pattern and/or practice by ASMC of disparate treatment among its Suzuki dealer body.

50.    As a result of Defendant ASMC's unlawful actions, Plaintiffs have been caused to suffer the following injuries and damages: (a) Plaintiffs lost their business; (b) Plaintiffs lost sales; (c) Plaintiffs lost income; (d) Plaintiffs were deprived of a fair allocation of new vehicles; (e) Plaintiffs lost potential warranty and service work; (f) Plaintiffs lost market share; (g) the reputation of Plaintiffs has been damaged; (h) Plaintiffs were caused to incur economic damages in the form of expending substantial sums of money to promote their dealership operations; (i) Plaintiff were caused to incur economic damages in the form of expending substantial sums of money to purchase and/or lease the necessary land, building(s), supplies, and/or equipment required to operate their dealerships; (j) the value of Plaintiffs' franchise was destroyed; (k) Plaintiffs were caused to incur economic damages in the form of the payment of attorneys fees to prosecute this action against Defendant; (l) Plaintiffs lost the use of their money and interest thereon; and (m) Plaintiffs have suffered such other damage as shall be enumerated hereinafter.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs demand judgment against Defendant ASMC in an amount of compensatory and punitive damages to be determined by a jury at trial of this cause. Additionally, pursuant to Alabama Code § 8-20-11, Plaintiffs requests an award of attorney's fees and costs.

## COUNT THREE

## ARBITRARY, BAD FAITH OR UNCONSCIONABLE CONDUCT
## IN VIOLATION OF ALABAMA CODE § 8-20-4(2)

51.     Plaintiffs re-allege each and every allegation set forth above and incorporates same by reference, as if all were set forth fully herein.

52.     Alabama Code § 8-20-4(2) allows automobile dealers to bring a civil action against manufacturers who engage in any action with respect to a franchise which is arbitrary, in bad faith or unconscionable and which causes damage to the dealer.

53.     Defendant ASMC engaged in prohibited conduct by (a) forcing and/or requiring the Plaintiff to accept substantial numbers of new motor vehicles which it had neither ordered nor requested; (b) restricting the Plaintiffs' allocation of new motor vehicles and/or failing to supply Plaintiffs with a sufficient allocation of popular, fast-selling vehicles; and (c) allocating new vehicle product to other Suzuki dealers in a manner disparate to that of Plaintiffs.

54.     As a direct and proximate result of the Defendant ASMC's unlawful actions, Plaintiffs have been caused to suffer the following injuries and damages: (a) Plaintiffs lost their business; (b) Plaintiffs lost sales; (c) Plaintiffs lost income; (d) Plaintiffs were deprived of a fair allocation of new vehicles; (e) Plaintiffs lost warranty and service work; (f) Plaintiffs lost market share; (g) Plaintiffs' reputation was damaged; (h) Plaintiffs were caused to incur economic damages in the form of

expending substantial sums of money to purchase, promote, and operate the dealership; (i) Plaintiff were caused to incur economic damages in the form of expending substantial sums of money to purchase and/or lease the necessary land, building(s), supplies, and/or equipment required to operate their dealerships; (j) the value of the Plaintiffs' franchise was destroyed; (k) Plaintiffs were caused to incur economic damages in the form of the payment of attorneys fees to prosecute the instant action against the Defendant; (l) Plaintiffs lost the use of their money and interest thereon; and (m) Plaintiffs have suffered such other damage as shall be enumerated hereinafter.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs demand judgment against Defendant ASMC in an amount of compensatory and punitive damages to be determined by a jury at trial of this cause. Additionally, pursuant to Alabama Code § 8-20-11, Plaintiffs request an award of attorney's fees and costs.

## COUNT FOUR

### FAILURE TO ACT IN GOOD FAITH IN VIOLATION OF ALABAMA CODE § 8-20-5(c)

55.     Plaintiffs re-allege each and every allegation set forth above and incorporates same by reference, as if all were set forth fully herein.

56.     Alabama Code § 8-20-5(a)(2) prohibits a manufacturer from canceling, terminating, modifying, failing to renew, or refusing to continue any

franchise relationship with a licensed new motor vehicle dealer unless the manufacturer has acted in good faith.

57.    Defendant ASMC has failed to act in accordance with the good faith mandate of the Motor Vehicle Franchise Act by virtue of terminating Plaintiffs' Dealer Agreement based upon acts that ASMC required Plaintiffs to perform. Specifically, ASMC issued an Amended Notice of Intent to Terminate Dealer Agreement that accused Plaintiffs of falsely and intentionally reporting dozens of vehicles as sold to retail customer. ASMC made such accusations with full knowledge of its own fraudulent scheme of requiring Plaintiffs to report phantom sales, as well as, ASMC's own participation in physically inputing fraudulent sales data into ASMC's system. Such actions were fully sanctioned by the upper echelons of ASMC's management. Defendant ASMC's accusations against Plaintiffs were intended to negate ASMC's responsibility to pay Plaintiffs the reasonable rental value of their dealership facilities for a period of up to three years, as well as other contractual and statutory obligations.

58.    As a direct and proximate result of Defendant ASMC's termination of Plaintiffs' Dealer Agreement, Plaintiffs have been caused to suffer the following injuries and damages: (a) Plaintiffs lost their business; (b) Plaintiffs lost sales; (c) Plaintiffs lost income; (d) Plaintiffs lost potential warranty and service work; (e) Plaintiffs lost market share; (f) Plaintiffs' reputations have been damaged; (g)

Plaintiffs were caused to incur economic damages in the form of expending substantial sums of money to purchase and promote their respective dealerships; (h) Plaintiffs were caused to incur economic damages in the form of expending substantial sums of money to purchase and/or lease the necessary land, building(s), supplies, and/or equipment necessary to operate their respective dealerships; (i) the value of the Plaintiffs' franchise was destroyed; (j) Plaintiffs lost the use of their money and interest thereon; and (k) Plaintiffs have suffered such other damage as is enumerated herein.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs demand judgment against Defendant ASMC in an amount of compensatory and punitive damages to be determined by a jury at trial of this cause. Additionally, pursuant to Alabama Code § 8-20-11, Plaintiffs request an award of attorney's fees and costs.

## COUNT FIVE

### TERMINATION OF DEALER AGREEMENT WITHOUT GOOD CAUSE IN VIOLATION OF ALABAMA CODE § 8-20-5(A)(3)

59.    Plaintiffs re-allege each and every allegation set forth above and incorporates same by reference, as if all were set forth fully herein.

60.    Alabama Code § 8-20-5(a)(3) prohibits a manufacturer from terminating, canceling or refusing to renew any dealership without good cause.

61.     Defendant ASMC constructively terminated Plaintiff's franchise relationship with ASMC by engaging in conduct that financially crippled Plaintiffs' operations and arbitrarily eliminating Plaintiffs' ability to continue providing warranty and service work on Suzuki automobiles.

62.     Defendant ASMC's constructive termination of Plaintiffs' franchise was effectuated without good cause and was the result of arbitrary, bad faith and/or unconscionable conduct on of the part of ASMC.

63.     As a result of the Defendant ASMC's unlawful actions, Plaintiffs have been caused to suffer the following injuries and damages: (a) Plaintiffs lost their business; (b) Plaintiffs lost sales; (c) Plaintiffs lost income; (d) Plaintiffs lost warranty and service work; (e) Plaintiffs lost market share; (f) Plaintiffs' reputations have been damaged; (g) Plaintiffs were caused to incur economic damages in the form of expending substantial sums of money to purchase and promote their respective dealerships; (h) Plaintiffs were caused to incur economic damages in the form of expending substantial sums of money to purchase and/or lease the necessary land, building(s), supplies, and/or equipment necessary to operate their respective dealerships; (i) the value of the Plaintiffs' franchise was destroyed; (j) Plaintiffs lost the use of their money and interest thereon; and (k) Plaintiffs have suffered such other damage as is enumerated herein.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs demand judgment against Defendant ASMC in an amount of compensatory and punitive damages to be determined by a jury at trial of this cause. Additionally, pursuant to Alabama Code § 8-20-11, Plaintiffs requests an award of attorney's fees and costs.

## COUNT SIX

### ARBITRARY, BAD FAITH OR UNCONSCIONABLE CONDUCT IN VIOLATION OF ALABAMA CODE § 8-20-4(2)

64.     Plaintiffs re-allege each and every allegation set forth above and incorporates same by reference, as if all were set forth fully herein.

65.     Alabama Code § 8-20-4(2) allows automobile dealers to bring a civil action against manufacturers who engage in any action with respect to a franchise which is arbitrary, in bad faith or unconscionable and which causes damage to the dealer.

66.     Defendant ASMC engaged in prohibited conduct by forcing Plaintiffs to falsely report vehicle sales.

67.     As a direct and proximate result of the Defendant ASMC's unlawful actions, Plaintiffs have been caused to suffer the following injuries and damages: (a) Plaintiffs lost their business; (b) Plaintiffs lost sales; (c) Plaintiffs lost income; (d) Plaintiffs' reputation was damaged; (e) Plaintiffs were caused to incur economic damages in the form of expending substantial sums of money to purchase, promote, and operate the dealership; (f) Plaintiff were caused to incur

economic damages in the form of expending substantial sums of money to purchase and/or lease the necessary land, building(s), supplies, and/or equipment required to operate their dealerships; (g) the value of the Plaintiffs' franchise was destroyed; (h) Plaintiffs were caused to incur economic damages in the form of the payment of attorneys fees to prosecute the instant action against the Defendant; (i) Plaintiffs lost the use of their money and interest thereon; and (j) Plaintiffs have suffered such other damage as shall be enumerated hereinafter.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs demand judgment against Defendant ASMC in an amount of compensatory and punitive damages to be determined by a jury at trial of this cause. Additionally, pursuant to Alabama Code § 8-20-11, Plaintiffs request an award of attorney's fees and costs.

## COUNT SEVEN

### ARBITRARY, BAD FAITH OR UNCONSCIONABLE CONDUCT IN VIOLATION OF ALABAMA CODE § 8-20-4(2)

68. Plaintiffs re-allege each and every allegation set forth above and incorporates same by reference, as if all were set forth fully herein.

69. Alabama Code § 8-20-4(2) allows automobile dealers to bring a civil action against manufacturers who engage in any action with respect to a franchise which is arbitrary, in bad faith or unconscionable and which causes damage to the dealer.

70.     Defendant ASMC engaged in prohibited conduct by refusing to continue shipping automotive parts to Plaintiffs on open account when Plaintiffs were attempting to continue their Suzuki warranty and service operations

71.     As a direct and proximate result of the Defendant ASMC's unlawful actions, Plaintiffs have been caused to suffer the following injuries and damages: (a) Plaintiffs lost their business; (b) Plaintiffs lost income; (c) Plaintiffs lost warranty and service work; (d) Plaintiffs lost market share; (e) Plaintiffs' reputation was damaged; (f) Plaintiffs were caused to incur economic damages in the form of expending substantial sums of money to purchase, promote, and operate the dealership; (g) the value of the Plaintiffs' franchise was destroyed; (h) Plaintiffs were caused to incur economic damages in the form of the payment of attorneys fees to prosecute the instant action against the Defendant; (i) Plaintiffs lost the use of their money and interest thereon; and (j) Plaintiffs have suffered such other damage as shall be enumerated hereinafter.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs demand judgment against Defendant ASMC in an amount of compensatory and punitive damages to be determined by a jury at trial of this cause. Additionally, pursuant to Alabama Code § 8-20-11, Plaintiffs request an award of attorney's fees and costs.

## COUNT EIGHT

## ARBITRARY, BAD FAITH OR UNCONSCIONABLE CONDUCT IN VIOLATION OF ALABAMA CODE § 8-20-4(2)

72.     Plaintiffs re-allege each and every allegation set forth above and incorporates same by reference, as if all were set forth fully herein.

73.     Alabama Code § 8-20-4(2) allows automobile dealers to bring a civil action against manufacturers who engage in any action with respect to a franchise which is arbitrary, in bad faith or unconscionable and which causes damage to the dealer.

74.     Defendant ASMC engaged in prohibited conduct by awarding a Suzuki service point to a competing automotive group located within Plaintiffs' relevant market area.

75.     As a direct and proximate result of the Defendant ASMC's unlawful actions, Plaintiffs have been caused to suffer the following injuries and damages: (a) Plaintiffs lost their business; (b) Plaintiffs lost income; (c) Plaintiffs lost warranty and service work; (d) Plaintiffs lost market share; (e) Plaintiffs' reputation was damaged; (f) Plaintiffs were caused to incur economic damages in the form of expending substantial sums of money to purchase, promote, and operate the dealership; (g) the value of the Plaintiffs' franchise was destroyed; (h) Plaintiffs were caused to incur economic damages in the form of the payment of attorneys fees to prosecute the instant action against the Defendant; (i) Plaintiffs

lost the use of their money and interest thereon; and (j) Plaintiffs have suffered such other damage as shall be enumerated hereinafter.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs demand judgment against Defendant ASMC in an amount of compensatory and punitive damages to be determined by a jury at trial of this cause. Additionally, pursuant to Alabama Code § 8-20-11, Plaintiffs request an award of attorney's fees and costs.

<u>COUNT NINE</u>

**NEGLIGENCE AND WANTONNESS**

76.     Plaintiffs re-allege each and every allegation set forth above and incorporates same by reference, as if all were set forth fully herein.

77.     Defendant ASMC voluntarily entered into a statutorily governed relationship with Plaintiffs which required ASMC to act in good faith in its dealings with the Plaintiffs.

78.     Pursuant to the law governing the parties' relationship (i.e. Alabama's Motor Vehicle Franchise Act), ASMC was prohibited from: (a) forcing Plaintiffs to purchase vehicles Plaintiffs did not request or order; (b) engaging in any action which is arbitrary, in bad faith or unconscionable and which caused damage to Plaintiffs; (c) allocating vehicles in an arbitrary, capricious, or discriminatory manner; (d) not acting in good faith in the cancellation, modification, or

termination of the parties' dealer agreement; and (e) not having good cause for canceling, modifying, or terminating the parties' dealer agreement.

79.    Defendant ASMC negligently, willfully, and/or wantonly engaged in acts which violated the above enumerated statutory prohibitions.

80.    As a result of the Defendant ASMC's unlawful actions, Plaintiffs have been caused to suffer the following injuries and damages: (a) Plaintiffs lost their business; (b) Plaintiffs lost sales; (c) Plaintiffs lost income; (d) Plaintiffs were deprived of a fair allocation of new vehicles; (e) Plaintiffs lost potential warranty and service work; (f) Plaintiffs lost market share; (g) the reputation of Plaintiffs has been damaged; (h) Plaintiffs were caused to incur economic damages in the form of reduced sales revenue and lost warranty work; (i) Plaintiffs were caused to incur economic damages in the form of expending substantial sums of money to promote their dealership operations; (j) Plaintiff were caused to incur economic damages in the form of expending substantial sums of money to purchase and/or lease the necessary land, building(s), supplies, and/or equipment required to operate their dealerships; (k) the value of the Plaintiffs' franchise was destroyed; (l) Plaintiffs were caused to incur economic damages in the form of the payment of attorneys fees to prosecute this action against Defendant; (m) Plaintiffs lost the use of their money and interest thereon; and (n) Plaintiffs have suffered such other damage as shall be enumerated hereinafter.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs demand judgment against Defendant ASMC in an amount of compensatory and punitive damages to be determined by a jury at trial of this cause.

## COUNT TEN

## NEGLIGENT AND WANTON SUPERVISION

81.     Plaintiffs re-allege each and every allegation set forth above and incorporates same by reference, as if all were set forth fully herein.

82.     Based upon the relationship between the parties, Defendant ASMC was under a duty to use due care, skill, and knowledge to properly train and supervise its employees, agents, and/or representatives in providing adequate and competent sales and service assistance to dealers, such as Plaintiffs, who sell and service Suzuki automobiles.

83.     Based upon the significant authority wielded by the Defendant ASMC's employees, agents, and/or representatives responsible for the allocation and distribution of vehicles in the geographical region encompassing Plaintiffs' dealerships, ASMC had a duty to regularly monitor and oversee said employees, agents, and/or representatives to ensure that the proper sales and service support and cooperation was extended to the Plaintiff and other dealers.

84.     Plaintiffs relied upon Defendant ASMC to regularly evaluate, investigate, oversee, and supervise the activities of ASMC's employees, agents,

and/or representatives to ensure that said employees, agents, and/or representatives were providing the proper sales and service support and cooperation to the Plaintiffs.

85.     Defendant ASMC negligently, wantonly, and/or recklessly failed to train, supervise, and/or monitor the activities of its employees, agents, and/or representatives to ensure that said employees, agents, and/or representatives were properly performing their duties. Defendant ASMC knew, or, in the exercise of reasonable care, should have known that its employees, agents, and/or representatives were not fulfilling their duties with regard to Plaintiffs. In the face of such knowledge, Defendant ASMC negligently, wantonly, and/or recklessly failed to supervise or oversee the activities of the aforementioned employees, agents, and/or representatives and further failed to take appropriate remedial actions to correct the deficiencies and improprieties which were reported by the Plaintiff.

86.     As a result of the Defendant ASMC's unlawful actions, Plaintiffs have been caused to suffer the following injuries and damages: (a) Plaintiffs lost their business; (b) Plaintiffs lost sales; (c) Plaintiffs lost income; (d) Plaintiffs were deprived of a fair allocation of new vehicles; (e) Plaintiffs lost potential warranty and service work; (f) Plaintiffs lost market share; (g) the reputation of Plaintiffs has been damaged; (h) Plaintiffs were caused to incur economic damages in the form

of reduced sales revenue and lost warranty work; (i) Plaintiffs were caused to incur economic damages in the form of expending substantial sums of money to promote their dealership operations; (j) Plaintiff were caused to incur economic damages in the form of expending substantial sums of money to purchase and/or lease the necessary land, building(s), supplies, and/or equipment required to operate their dealerships; (k) the value of the Plaintiffs' franchise was destroyed; (l) Plaintiffs were caused to incur economic damages in the form of the payment of attorneys fees to prosecute this action against Defendant; (m) Plaintiffs lost the use of their money and interest thereon; and (n) Plaintiffs have suffered such other damage as shall be enumerated hereinafter.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs demand judgment against Defendant ASMC in an amount of compensatory and punitive damages to be determined by a jury at trial of this cause.

## JURY DEMAND

### PLAINTIFFS DEMAND TRIAL BY STRUCK JURY

Respectfully submitted,

THOMAS E. BADDLEY, JR.
BAD-001

JEFFREY P. MAURO
MAU-007

Baddley & Mauro, LLC
2545 Highland Avenue, Ste. 100
Birmingham, AL 35205
205-939-0090