IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

JAY AUTOMOTIVE GROUP, INC.       *
d/b/a Jay Suzuki,
                                 *
     Plaintiff,
                                 *
vs.                                      CASE NO. 4:11-CV-129(CDL)
                                 *
AMERICAN SUZUKI MOTOR
CORPORATION,                     *

     Defendant.                  *
_____

O R D E R

     This action arises from a dispute between Plaintiff, Jay

Automotive Group, Inc. d/b/a Jay Suzuki ("Jay"), and Defendant,

American Suzuki Motor Corporation ("ASMC").  These parties

entered into a franchise agreement for Jay to sell, offer to

sell, solicit, and advertise Suzuki vehicles, service Suzuki

vehicles, and sell Suzuki branded parts at a motor vehicle

dealership in Muscogee County, Georgia.  Jay alleges that ASMC

violated the Georgia Motor Vehicle Franchise Practices Act,

O.C.G.A. § 10-1-620 *et seq.*, and the Federal Racketeer

Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et

seq.* ("RICO"), and committed fraud and negligent

misrepresentation in violation of Georgia law.  Presently

pending before the Court is ASMC's Motion to Dismiss (ECF No. 9)

for failure to state a claim.  For the following reasons, the motion is denied.

## FACTUAL ALLEGATIONS

Accepting the allegations in Jay's First Amended Complaint ("Amended Complaint") (ECF No. 5) as true and construing all reasonable inferences in Jay's favor as required at this stage of the proceedings, the Court finds that Jay has alleged the following facts.

In May of 1991, Jay entered into a franchise agreement ("the Franchise") with ASMC for the purpose of being licensed and authorized to use the Suzuki trademark in: selling, offering to sell, soliciting, and advertising the sale of new Suzuki vehicles; servicing Suzuki vehicles, including performing warranty repairs authorized by ASMC; and selling Suzuki branded parts.  Jay operated the Franchise as an authorized Suzuki dealer at its Suzuki Square dealership in Columbus, Georgia. Because of ASMC's actions, Jay was subsequently forced to close the dealership.

Continuously from 2005, ASMC, through its representatives and agents, represented to Jay via United States Mail, wire, and internet transmittals that ASMC was "substantially increasing the number of Suzuki vehicles to be distributed regionally and that [ASMC] was going to substantially and significantly increase its national and regional efforts to promote the sale

of Suzuki vehicles." 1st Am. Compl. ¶ 7, ECF No. 5 [hereinafter Am. Compl.]. On September 13, 2005, ASMC's president of automotive operations, Koichi Suzuki, personally represented to Jay at its dealership that ASMC "would be engaged in and undertake intensified marketing and promotions, add new products, and take necessary measures to triple its sales from 2003 to 2007." *Id.* ¶ 8. During 2005 to at least 2009, ASMC repeatedly represented to Jay in monthly email communications that it would be significantly increasing sales. ASMC's representatives and employees, including Pat Murphy, Bruce Shufreider, and Clint Wetty, made these representations.

Making these representations, ASMC intended for Jay to believe ASMC would be "engaging in and funding advertising, marketing and product promotion in the form of advertisements and product incentives." *Id.* ¶ 10. At the time of the representations, ASMC knew these methods were integral to accomplishing the goal of tripling sales. ASMC also "knew it had no intention of expending its own money to provide adequate advertising, marketing or a meaningful sales strategy to increase its sales." *Id.* ¶ 11.

In September 2005, ASMC "falsely reported an approximate fifteen percent increase in nationwide sales" for August 2005. *Id.* ¶ 12. ASMC also misrepresented to Jay that Jay "could and should achieve similar sales growth." *Id.* From 2005 through

2008, ASMC continued to report similarly false sales numbers to Jay via oral communications, emails, mail, and wire transmittals. ASMC's representatives, including Murphy, Shufreider, and Wetty, made similar false representations by email to Jay. ASMC specially prepared for Jay annual Sales Performance Evaluations and Opportunity and Marketing Representation Guides showing false sales figures. ASMC further reported false numbers in press releases and to trade journals, such as Automotive News. ASMC represented to Jay that Jay "could and would achieve similar sales numbers and profit if [Jay] would spend more money 'investing' in its Suzuki franchise." *Id.* ¶ 13. In making these representations through 2008, ASMC knew the representations and other similar representations were false and misleading. *Id.* ¶ 14.

ASMC also "induced and conspired with Suzuki dealerships, including Huntsville Suzuki, Shoals Suzuki and Varsity Suzuki, to report inflated, false sales numbers." *Id.* ASMC had the express purpose of benefitting itself by inducing Jay and other dealers to maintain and invest additional money in their franchises and purchase vehicles from ASMC. Jay did not know ASMC's representations were false. ASMC knew that Jay did not know and could not have known its representations were false.

From at least 2005 to 2007, ASMC knew Jay was considering selling or terminating the Franchise. ASMC intended its

representations to induce Jay to continue operating the Franchise and purchasing Suzuki vehicles from ASMC. ASMC also intended to induce Jay to spend money advertising, marketing, and promoting the Suzuki brand. In reliance on ASMC's representations, Jay did not terminate or sell its Franchise. *Id.* ¶ 17.

In June 2007, Jay executed a new dealership agreement with ASMC and continued its dealership, investing more in the Franchise. Jay entered this agreement in express reliance on ASMC's falsely reported sales numbers, assurances of growing Jay's sales numbers, and promises to increase the visibility of Suzuki products in American markets with increased advertising and marketing efforts by ASMC. *Id.* ¶ 18. Jay invested more than $1,500,000.00 in building and equipping a new and larger sales facility, which ASMC expressly required for Jay to maintain the Franchise. Jay also incurred customary operating costs and expenses associated with operating and maintaining the expanded Franchise. Jay incurred advertising and marketing costs, which were necessary because ASMC refused to provide those services. ASMC failed to adequately market the Suzuki brand even though it controlled the content and form of all advertisements and benefitted from the increased brand exposure provided by Jay's marketing. ASMC also made material misrepresentations about the Suzuki brand's viability. *Id.* ¶ 19.

Additionally, ASMC failed to provide marketable vehicle models to Jay despite Jay's repeated requests for certain vehicles by specific descriptions that Jay could reasonably be expected to sell in its market. ASMC refused to provide the requested models despite their availability and instead allocated them to "more favored dealerships." *Id.* ¶ 20. From 2005 to the close of the dealership, ASMC ignored Jay's repeated requests to purchase marketable inventory and only made available less marketable vehicles or conditioned the sale of marketable vehicles on "impermissible extraneous requirements." *Id.* ¶ 21-22. The less marketable vehicles included those overloaded with options and out of the price range for Jay's buyers' market and the locality's demographic. ASMC only gave Jay the option to buy the "leftover" and less marketable Suzuki brand vehicles that other dealers did not purchase. *Id.* ¶ 22.

Jay performed poorly, and its poor performance was directly attributable to ASMC's failure to reasonably promote the Suzuki brand and ASMC's failure to provide requested marketable vehicles and new sales products. *Id.* ¶ 23. ASMC's failures and representations discussed above as well as decreasing the number of Suzuki vehicles distributed to Jay's region caused Jay the following monetary losses, in addition to continued damage to reputation: more than $400,000.00 for the 2007 fiscal year; more

than $350,000.00 for the 2008 fiscal year; and more than $75,000.00 for the 2009 fiscal year.

On December 2, 2009, a complaint was filed in the Northern District of Alabama, alleging ASMC "colluded and conspired with certain Suzuki dealers . . . to report false and misleading sales numbers to [Jay] among other Suzuki dealers." *Id.* ¶ 34 (referencing *D2K, Inc. d/b/a/ Suzuki of Huntsville, et al. v. American Suzuki Motor Corporation*, No. 5:09-CV-02436). With the filing of that complaint, Jay learned for the first time that ASMC, including its president Koichi Suzuki, executive Jim Potter, and general manager Patrick Murphy, "conspired and colluded with numerous [named] dealers . . . to falsely report inflated sales numbers from 2005 through 2008." *Id.* ¶ 35. ASMC committed these acts "to defraud [Jay] and other innocent dealers by representing that the falsely reported sales numbers were in fact achievable by [Jay]." *Id.* ¶ 36.

During 2010, ASMC again decreased the number of vehicles it distributed regionally, failed to promote the regional sale of Suzuki vehicles or the Suzuki brand, and refused to provide Jay with more marketable inventory or new sales products. In May 2010, ASMC "attempted to induce [Jay] to voluntarily terminate the Franchise, which offer [Jay] ultimately rejected." *Id.* ¶ 29. ASMC sought to prevent a lawsuit under Georgia law, including the Franchise Act, by trying to induce Jay to

voluntarily terminate the Franchise. At no time did ASMC notify Jay of any intention to terminate the Franchise.

Starting in approximately May 2010, ASMC "attempt[ed] to besmirch" Jay's reputation and induce Jay to voluntarily terminate the Franchise. *Id.* ¶ 31. To do so, ASMC, "through its employees, including but not limited to Patrick Murphy, has intentionally promulgated misleading scores of [Jay's] customer satisfaction ratings and has wrongfully stated that [Jay] has inadequate or substandard customer satisfaction review scores in correspondence to [Jay]." *Id.* During 2011, ASMC again decreased the number of vehicles it distributed regionally, failed to promote the regional sale of Suzuki vehicles or the Suzuki brand, and refused to provide Jay with more marketable inventory or new sales products. ASMC's actions and aforementioned representations and failures caused Jay to incur a loss of over $200,000.00 for the 2010 fiscal year.

"ASMC intended to and did benefit financially from its fraudulent misrepresentations to, and inducement of, [Jay]." *Id.* ¶ 37. These benefits included, but were not limited to, selling vehicles to Jay and benefitting from the promotion and recognition for the Suzuki brand furnished by Jay's self-funded advertising and marketing campaigns. Ultimately, ASMC's actions resulted in Jay's loss of money, business reputation, and inability to generate a profit and continue operation.

DISCUSSION

ASMC seeks to dismiss all of Jay's claims based on its failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). ASMC seeks to dismiss Jay's claims that are grounded in fraud because of Jay's alleged failure to plead those claims with sufficient specificity as required by Federal Rule of Civil Procedure Rule 9(b). The Court will first evaluate the Complaint's compliance with Rule 9(b) and then evaluate ASMC's other arguments for dismissal as to each claim under Rule 12(b)(6).

## I.    Federal Rule of Civil Procedure 9(b)

ASMC contends that Jay's claims are all grounded in fraud and that the Amended Complaint does not comply with Rule 9(b) because the facts pled by Jay in support of its claims are not sufficiently specific. "Generally, to survive a motion to dismiss, a complaint 'does not need detailed factual allegations,' but it must provide the defendant with fair notice of what the claim is about and the grounds upon which it rests." *Curtis Inv. Co. v. Bayerische Hypo-und Vereinsbank, AG*, 341 F. App'x 487, 491 (11th Cir. 2009) (per curiam) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 545 (2007)). Where the claims are grounded in fraud, a complaint must comply with Rule 9(b)'s requirement that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or

mistake.   Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "Thus, under Rule 9(b), it is sufficient to plead the who, what, when, where, and how of the allegedly false statements and then allege generally that those statements were made with the requisite intent." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008). Rule 9(b) "is read alongside [Federal Rule of Civil Procedure 8(a)], which requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997) (quoting Fed. R. Civ. P. 8(a)). Accordingly, "[t]he application of [Rule 9(b)] must not abrogate the concept of notice pleading." *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1998).

The gravamen of Jay's Amended Complaint is that ASMC fraudulently induced it to retain the Franchise, buy Suzuki vehicles, including those it did not voluntarily order, and expend money in operating, advertising, and expanding the Franchise.   Jay alleges that ASMC did so by knowingly misrepresenting to Jay that it would promote the sale of Suzuki vehicles via advertisements and marketing in Jay's region and that Jay could and would meet increased sales figures.   Jay further claims that ASMC used falsified sales numbers to induce Jay, and ASMC knew that it never intended to spend its own money

10

on adequate advertising, marketing, or a meaningful sales and promotion strategy to increase sales for Jay or Jay's region. Jay also alleges that ASMC knew Jay would, and that Jay did in fact, rely on these representations in investing in the Franchise to its detriment and to the benefit of ASMC and the Suzuki brand. Additionally, Jay claims that ASMC reported false customer satisfaction scores to Jay. ASMC also allegedly refused to provide Jay with marketable inventory for the dealership's demographic as requested by Jay or placed unreasonable conditions on the receipt of such inventory.

These allegations clearly place ASMC on notice of the claims asserted against it. Moreover, Jay has not made general conclusory statements in support of its claims, but instead has alleged particular facts to demonstrate the fraudulent representations and conduct that form the basis for Jay's claims against ASMC in this lawsuit. Jay's Amended Complaint contains specific factual allegations as to when the alleged misrepresentations were made, who made them, and how they were communicated. *E.g.,* Am. Compl. ¶¶ 8-9, 12-13. Jay also adequately alleges that in making these statements and taking these actions, ASMC intended for Jay to believe its representations and to induce Jay to act to its detriment, even though ASMC knew that it had no intentions of following through on the marketing, advertising, and efforts to increase sales

11

that it represented to Jay. *E.g., id.* ¶ 14.  Further, ASMC knew Jay "did not and could not have known these representations to be false." *Id.* ¶ 15.  This is sufficient under Rule 9(b). *See Durham,* 847 F.2d at 1511-12.

The purpose of Rule 9(b)'s particularity requirement is two-fold: (1) alert defendants to the "precise misconduct with which they are charged"; and (2) protect defendants "against spurious charges of immoral and fraudulent behavior." *Id.* at 1511 (internal quotation marks omitted).  "[F]air notice is [p]erhaps the most basic consideration underlying Rule 9(b)." *Brooks*, 116 F.3d at 1381 (internal quotation marks omitted). ASMC cannot reasonably complain that it is not on notice regarding what misconduct Jay alleges it committed.  The Court finds that Jay's Amended Complaint satisfies Rule 9(b)'s particularity requirement.

## II.  Failure to State a Claim

When considering a 12(b)(6) motion to dismiss, the Court must accept as true all facts set forth in the plaintiff's complaint and limit its consideration to the pleadings and exhibits attached thereto. *Twombly*, 550 U.S. at 556; *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S.

662, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[A] formulaic recitation of the elements of a cause of action will not do[.]" *Id.* Although the complaint must contain factual allegations that "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims, *id.* at 556, "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable,'" *Watts v. Fla. Int'l Univ.,* 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly,* 550 U.S. at 556).

A.   Georgia Motor Vehicle Franchise Act Claims

The first three counts of Jay's Amended Complaint assert claims under three separate parts of the Georgia Motor Vehicle Franchise Practices Act ("Franchise Act"). Count 1 asserts claims under Part 2 of the Franchise Act titled "Motor Vehicle Dealer's Day in Court Act." Count 2 asserts claims under Part 4 of the Franchise Act titled "Motor Vehicle Franchise Continuation and Succession Act." Finally, Count 3 asserts claims under Part 5 of the Franchise Act titled "Motor Vehicle Fair Practices Act."

        1.    *Motor Vehicle Dealer's Day in Court Act and Motor Vehicle Franchise Continuation & Succession Act Claims (Counts 1 and 2)*

Jay asserts the following conduct by ASMC in support of Count 1 of its Amended Complaint: constructive termination of the franchise, bad faith operation of the franchise, and bad faith withholding of benefits in violation of the Motor Vehicle Dealer's Day in Court Act, O.C.G.A. § 10-1-631 ("Dealer's Act"). In support of Count 2, Jay alleges that ASMC terminated the franchise without good cause in violation of the Motor Vehicle Franchise Continuation and Succession Act, O.C.G.A. § 10-1-651 ("Continuation Act"). ASMC seeks dismissal of these counts arguing that neither of the applicable statutes provides a claim for "constructive" termination of the franchise and that Jay has not adequately alleged a failure of good faith in the operation of the franchise or withholding of benefits. The Court addresses these issues in turn.

       i.  CONSTRUCTIVE TERMINATION OF THE FRANCHISE

Jay claims that ASMC constructively terminated the franchise without good faith, good cause, or notice of its intent to terminate in violation of the Dealer's Act and the Continuation Act. Am. Compl. ¶¶ 40-41, 46. ASMC argues these claims of constructive termination in Counts 1 and 2 should be dismissed because the Franchise continues to operate and the statutes do not provide, and no Georgia court has recognized, a

constructive termination claim under the Acts as pled in Counts 1 and 2.

Contrary to ASMC's suggestion, Jay alleges that the dealership contemplated by the Franchise is no longer in operation due to ASMC's actions and that ASMC constructively terminated the Franchise.  Am. Compl. ¶ 6.  Addressing ASMC's argument regarding constructive termination of the franchise, the Court acknowledges that Georgia courts have not yet decided whether a claim for "constructive" termination based on a franchisor's failure to act in good faith is permitted under the Dealer's Act as pled in Count 1 or under the Continuation Act for lack of notice or good cause as pled in Count 2.  Although Georgia courts have not yet decided whether the Acts contemplate claims for "constructive" termination, the Eleventh Circuit has implicitly held that claims for constructive termination based upon bad faith would be permissible.  In *Carroll Kenworth Truck Sales, Inc. v. Kenworth Truck Co.*, 781 F.2d 1520 (11th Cir. 1986), the Court concluded that bad faith conduct giving rise to a constructive termination of a franchise agreement is cognizable under a similar Alabama statute, the Alabama Motor Vehicle Franchise Act, Ala. Code § 8-20-1 *et seq.* ("Alabama Act").  *Id.* at 1528-29.  Although the Court did not expressly state that a constructive termination claim was actionable, such a finding was necessary to the Court's holding.  The plaintiff

in that case had alleged that its franchise agreement was constructively terminated in bad faith, and the Eleventh Circuit found that under the Alabama statute "a jury reasonably could conclude [Defendant] failed to act in good faith." *Id.* Therefore, the Eleventh Circuit remanded the case for the trial of that claim. *Id.* As described below, the Alabama statute interpreted by the Eleventh Circuit in *Carroll Kenworth Truck Sales, Inc.* is essentially indistinguishable from the Georgia statute in this case.

The Alabama Act, like the Georgia Franchise Act, defines good faith as "[h]onesty in fact and the observation of reasonable commercial standards of fair dealing in the trade." Ala. Code § 8-20-3(7); *see also* O.C.G.A. § 10-1-622(8) (same definition). The terms of the Alabama Act are similar to the Georgia Franchise Act, and both require good faith, good cause, and notice in terminating a franchise or dealer agreement. *Compare* Ala. Code § 8-20-4.1 ("Every dealer agreement . . . shall impose on the parties the obligation to act in good faith and to deal fairly.") and Ala. Code § 8-20-5 ("[n]o manufacturer shall cancel, terminate . . . any franchise relationship with a licensed new motor vehicle dealer unless the manufacturer [satisfies the statute's notice requirements, acts in good faith, or has good cause for the termination]"); *with* O.C.G.A. § 10-1-631(a) (Dealer's Act requires franchisor to act in good

faith in "termination" of a franchise) and O.C.G.A. § 10-1-651(a) ("no franchisor shall cancel, terminate . . . any franchise with a dealer unless the franchisor [satisfies the statute's notice requirements and has good cause for termination]").   Therefore, if a franchisor forces the termination of a franchise agreement in bad faith or without good cause and/or notice, the Court finds the franchisee has a claim even if the franchisor did not explicitly use the magic words: "we terminate the franchise."   ASMC's argument to the contrary, which is unsupported by any binding or persuasive authority, is rejected.   Accordingly, this aspect of Count 1 of Jay's Amended Complaint states a claim upon which relief may be granted, and Count 2 states a claim for constructive termination.

### ii.   BAD FAITH OPERATION OF BUSINESS, BUSINESS TRANSACTIONS, & WITHHOLDING OF BENEFITS

As part of Count 1, Jay alleges two additional violations of the Dealer Act.   First, Jay alleges that ASMC failed to act in good faith in operating the Franchise, failing to report Jay's true customer satisfaction scores and ratings, and in its business transactions with Jay.   ASMC seeks to dismiss these claims on the basis that Jay did not plead a good faith violation tied to a specific obligation in the franchise agreement.   The Court finds this argument unpersuasive.   The

Dealer Act imposes a duty of good faith on a franchisor generally "in connection with the operation of a dealer's business pursuant to a franchise" or "in any of its business transactions with a dealer." O.C.G.A. § 10-1-631(a)(1). The Court finds that Jay has adequately pled this aspect of its claim under Count 1, and, therefore, it survives ASMC's motion to dismiss.

Second, Jay contends that ASMC "intentionally and in bad faith withheld inventory and advertising and marketing assistance from [Jay]." Am. Compl. ¶ 44. This claim is properly pled and brought under the Dealer Act, O.C.G.A. § 10-1-631(a)(2), which declares that a franchisor's withholding of benefits in any of its business transactions with a dealer violates the statute. ASMC presents no arguments in support of the dismissal of this aspect of Jay's claim under Count 1.

For all of the reasons previously stated, the Court denies ASMC's motion to dismiss the claims asserted in Counts 1 and 2.

> 2. *Georgia Motor Vehicle Fair Practices Act Claims (Count 3)*

In Count 3 of its Amended Complaint, Jay asserts claims under the Georgia Motor Vehicle Fair Practices Act, O.C.G.A. § 10-1-660 *et seq.* ("Fair Practices Act").

First, Jay alleges that, in violation of O.C.G.A. § 10-1-661, ASMC attempted to and did require and/or coerce Jay to: (1)

order and accept delivery of Suzuki vehicles that Jay did not voluntarily order and that were not advertised by ASMC in Jay's market; and (2) significantly expand and construct new facilities for the Franchise while making knowingly false assurances that ASMC would provide a reasonable supply of new motor vehicles to justify the expansion. Am. Compl. ¶¶ 48-49. *See* §§ 10-1-661(b)(1), (4). ASMC seeks to dismiss these claims because Jay failed to identify any term or provision of the parties' dealer agreement in connection with these claims and failed to allege conduct amounting to coercion or attempts to coerce. The plain terms of the statute require that the franchisee prove that the franchisor "compel[led] or attempt[ed] to compel by threat or use of force" the franchisee to give up rights it had by virtue of the franchise relationship. O.C.G.A. § 10-1-661(a). Jay has adequately alleged such a claim.

Jay alleges that ASMC forced it into the "choice of either not buy[ing] any Suzuki vehicles at all or buying the 'leftover' less sellable Suzuki vehicles," by refusing to fill Jay's orders for sellable vehicles and "condition[ing] receipt of more sellable inventory on impermissible extraneous requirements." Am. Compl. ¶¶ 21-22, 24, 26. Jay calls this a "continual Hobson's choice," which means that it had only one actual option: to take or leave the cars. *Id.* ¶ 22. In other words,

Jay claims ASMC forced it to either have inventory unsuited to its market or no inventory at all.  The Court finds that these allegations adequately state a claim under O.C.G.A. § 10-1-661(a)-(b)(1).

Jay also alleges that ASMC expressly required it to modify and expand its facilities to maintain the Franchise.  Am. Compl. ¶ 19.  Because Jay's choice was either to expand or lose the Franchise, it alleges that it was coerced into the expansion without proper assurances by ASMC.  These allegations sufficiently state a claim under O.C.G.A. § 10-1-661(b)(4).

Jay additionally alleges claims under O.C.G.A. § 10-1-662(a)(1), (5), (7), (9), & (11).  *See* Am. Compl. ¶¶ 50-54.  As to these claims, ASMC seeks dismissal generally, but ASMC fails to make any specific argument as to why these claims should be dismissed.  Therefore, the Court declines to dismiss these claims at this stage in the proceedings.

For the reasons stated above, ASMC's motion to dismiss Count 3 of Jay's Amended Complaint is denied.

B.   Federal Civil RICO (Count 4)

In Count 4 of his Amended Complaint, Jay asserts a federal civil RICO claim pursuant to 18 U.S.C. § 1961 *et seq.*, claiming ASMC engaged in mail and wire fraud when it communicated intentionally false sales numbers and other material misrepresentations to Jay starting in 2005 and continuously

thereafter.   Am. Compl. ¶ 55-60; Pl.'s Resps. to Civil RICO Interrogs. No. 1, ECF No. 16-1 [hereinafter RICO Interrogs.].[1] Based on these predicate acts, Jay alleges RICO violations under 18 U.S.C. § 1962(a)-(c).   ASMC contends Jay's RICO claim should be dismissed because it fails to state a claim for relief under the RICO statute, specifically failing to plead the requirements of § 1962(a)-(c).

"[A]ny person injured in his business or property by reason of a violation" of § 1962 may bring a civil action for damages in federal district court.   18 U.S.C. § 1964(c).   "To state a claim under RICO a plaintiff must allege each of the following four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Durham*, 847 F.2d at 1511 (internal quotation marks omitted).

ASMC qualifies as an "enterprise" because it is a corporation and the other dealers with which ASMC allegedly worked are also legal entities associated in fact with ASMC, their franchisor.   18 U.S.C. § 1961(4); RICO Interrogs. No. 3.

---

[1] Jay submitted its RICO Interrogatories required by Local Rule 33.3 after ASMC filed its Motion to Dismiss.   Because Jay originally filed its action in state court, it did not file these Interrogatories with its complaint as required by the Rule.   Local Rule 33.3 requires RICO Interrogatories "[f]or the purpose of aiding the court and the RICO defendants in ascertaining the validity and scope of RICO claims." M.D. Ga. R. 33.3.   Because the purpose of the interrogatories is to expound upon the complaint in a RICO action, the Court considers the interrogatories as did ASMC in its Reply.   Def. American Suzuki Motor Corp.'s Reply in Supp. of its Mot. to Dismiss Pl.'s First Am. Compl. 9-10 & n.5, ECF No. 19.

Notably, "a single entity can be both the defendant and the 'enterprise' in which the defendant participated." *Johnson Enters. of Jacksonville, Inc. v. FPL Grp.*, 162 F.3d 1290, 1317 n. 66 (11th Cir. 1998).

"Racketeering activity" includes, among other predicate acts, acts indictable under the mail and wire fraud statutes, 18 U.S.C. §§ 1341, 1343, on which Jay predicated its claims. 18 U.S.C. § 1961(1)(B). Mail or wire fraud "occurs when a person (1) intentionally participates in a scheme to defraud another of money or property and (2) uses the mails or wires in furtherance of that scheme." *Johnson Enters.*, 162 F.3d at 1317 (internal quotation marks omitted). "[C]onduct forms a pattern [of racketeering] if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Durham*, 847 F.2d at 1512 (quoting *Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497 n.14 (1985)). Jay alleges that ASMC's conduct included making misrepresentations and false statements to Jay regarding sales figures, advertising, vehicle supply, and business operations through mail and wire transmissions, including emails. Jay claims the false representations by ASMC and its various named employees and representatives through the mails and wires occurred continuously from 2005 to at least 2009. *See e.g.*, Am.

Compl. ¶ 9. Based on these allegations, the Court concludes that Jay has alleged each essential element of a civil RICO claim.

Jay has also sufficiently pled the specific conduct that violates 18 U.S.C. § 1962(a)-(c). Jay first claims a violation of § 1962(a), "which prohibits investing the proceeds of a pattern of racketeering activities in an enterprise." *Liquidation Comm'n of Banco Intercont'l, S.A. v. Renta*, 530 F.3d 1339, 1352 (11th Cir. 2008). Jay alleges that ASMC used or invested the proceeds ASMC gained from Jay by inducing Jay and similarly situated dealers, through a pattern of reporting false sales data, to invest in the Franchise and purchase Suzuki products, and ASMC used or invested back into ASMC the income derived from this conduct. RICO Interrogs. No. 6. Second, Jay contends ASMC violated § 1962(b), which holds liable those who "through a pattern of racketeering activity . . . acquire or maintain, directly or indirectly, any interest in or control of any enterprise." 18 U.S.C. § 1962(b). Jay claims that through its racketeering activities, ASMC maintained its interest and control of Jay and other dealerships by inducing Jay and others to maintain their dealerships and franchises and continue purchasing Suzuki vehicles from ASMC. *E.g.*, Am. Compl. ¶¶ 14-18, 30; RICO Interrogs. No. 7. Jay also claims a violation of 18 U.S.C. § 1962(c), "which prohibits a person associated with

'an enterprise' from participating, 'directly or indirectly,' in the enterprise's affairs 'through a pattern of racketeering activity.'" *Douglas Asphalt Co. v. Qore, Inc.*, 657 F.3d 1146, 1151 (11th Cir. 2011).  Contrary to ASMC's assertion that Jay did not set forth the individuals employed and associated with the enterprise who participated in the enterprises affairs, Jay did so both in its RICO Interrogatory Responses and its Amended Complaint.  Am. Compl. ¶¶ 9, 13-14, 31; RICO Interrogs. No. 3.

Finally, ASMC challenges whether Jay has established the requisite causation for its RICO claims.  In a civil RICO action, a plaintiff must satisfy 18 U.S.C. § 1964(c), which requires (1) an injury to "business or property," and (2) "that such injury was 'by reason of' the substantive RICO violation." *Williams v. Mohawk Indus. Inc.*, 465 F.3d 1277, 1282-83 (11th Cir. 2006) (per curiam) (quoting § 1964(c)).  Jay asserted specific harm and injury to its dealership business by reason of ASMC's inducing Jay to invest in the Franchise, including advertising, expanding its showroom, and purchasing Suzuki vehicles, in reliance on ASMC's false statements and misrepresentations to its financial and reputational detriment, culminating in the dealership's closing.  Am. Compl. ¶¶ 6-7, 10-19, 37-38; RICO Interrogs. No. 10.

Defendant will certainly have the opportunity at the appropriate time to demonstrate that no evidence exists

supporting Jay's allegations.  However, the Court concludes that Jay's Amended Complaint sufficiently states RICO claims against ASMC.  Accordingly, the Court denies ASMC's motion to dismiss as to Jay's RICO claims.

C.   Fraud (Count 5)

Jay also asserts a fraud claim against ASMC under Georgia law.  In order to establish fraud under Georgia law, a plaintiff must show five elements: "(1) false representation by defendant; (2) scienter; (3) intent to induce the plaintiff to act or refrain from acting; (4) justifiable reliance by the plaintiff; and (5) damage to the plaintiff." *Ades v. Werther*, 256 Ga. App. 8, 11, 567 S.E.2d 340, 343 (2002).

Jay's fraud claim is predicated on the following alleged misrepresentations: (1) ASMC was increasing the number of vehicles to be distributed (Am. Compl. ¶ 7); (2) ASMC would increase its national and regional marketing and advertising efforts to promote Suzuki vehicles (*id.* ¶¶ 7-10); (3) ASMC would significantly increase Suzuki sales and Jay could and should achieve sales growth (*id.* ¶¶ 8-10, 12-13); (4) ASMC and its representatives reported false sales numbers to Jay (*id.* ¶¶ 12-14, 35-36); (5) ASMC promulgated misleading scores of Jay's customer satisfaction ratings and wrongly stated customer satisfaction review scores (*id.* ¶ 31).  Jay claims ASMC made these representations to benefit financially and to induce Jay

25

to continue investing in the Franchise, promoting the Suzuki brand, and purchasing Suzuki vehicles from ASMC. *Id.* ¶¶ 13-16, 62. Further, Jay contends that while ASMC intended for Jay to believe these statements, ASMC knew it had no intention of fulfilling them. *Id.* ¶¶ 10-11. Jay also alleges that ASMC knew that Jay did not and could not have known ASMC's representations were false, *id.* ¶ 15, and that ASMC knew Jay was contemplating selling or terminating the Franchise when it made the mentioned representations, *id.* ¶ 16. Finally, these representations induced Jay to act to its detriment by continuing the Franchise, continuing to buy vehicles from ASMC, spending money on advertising, and entering into a new Dealership Agreement in 2007, among other things. *Id.* ¶¶ 16-19. As a result, Jay incurred monetary damages and damages to its reputation. *Id.* ¶¶ 19, 23, 25-28, 33, 37, 64.

ASMC argues that this claim should be dismissed because Jay's claim is based on promissory statements about what ASMC would or would not do in the future and such statements or the failure to fulfill them cannot constitute fraud. ASMC is correct that as a general rule "actionable fraud cannot be predicated upon promises to perform some act in the future." *Buckley v. Turner Heritage Homes, Inc.*, 248 Ga. App. 793, 795, 547 S.E.2d 373, 376 (2001) (internal quotation marks omitted). And, "actionable fraud [does not] result from a mere failure to

perform promises made." *Id.* (internal quotation marks omitted). However, "[a]n exception to the general rule exists where a promise as to future events is made with present intent not to perform or where the promisor knows that the future event will not take place." *Id.*

Based on the allegations summarized above, the Court finds that Jay has alleged that ASMC made false representations, knowing them to be false, with no intention to perform. Accordingly, Jay states a claim for fraud under Georgia law. The Court also rejects ASMC's contention that Jay did not adequately allege scienter. Since Jay has sufficiently alleged a cause of action for fraud, ASCM's motion to dismiss that claim is denied.

D.  Negligent Misrepresentation (Count Six)

Finally, Jay makes a claim of negligent misrepresentation against ASMC. The tort of negligent misrepresentation consists of three elements: (1) the defendant negligently supplied false information to foreseeable persons; (2) such persons reasonably relied upon that information; and (3) such persons suffered economic harm proximately resulting from such reliance. *Hardaway Co. v. Parsons, Brinckerhoff, Quade & Douglas, Inc.*, 267 Ga. 424, 426, 479 S.E.2d 727, 729 (1997).

ASMC seeks to dismiss this claim on the basis that Jay failed to plead the first element required for the tort, arguing

that Jay's negligent misrepresentation claim asserts a willful misrepresentation and makes no mention of negligence by ASMC. Construing all reasonable inferences in Jay's favor, as required at this stage of the proceedings, the Court finds that Jay's negligent misrepresentation claim is pled as an alternative claim to its fraud claim.  Although the Court acknowledges that Jay cannot prevail on both a fraud claim and a negligent misrepresentation claim because the elements of each claim potentially conflict, the Court finds that Jay has stated an alternative claim for negligent misrepresentation under Georgia law.

**III. Statute of Limitations**

ASMC also seeks dismissal of all of Jay's claims to the extent they are barred by the applicable statute of limitations. The applicable statute of limitations for each of Jay's claims is four years.  O.C.G.A. § 10-1-625 (Franchise Act); *Rotella v. Wood*, 528 U.S. 549, 552 (2000) (RICO); *Anthony v. Am. Gen. Fin. Servs., Inc.*, 287 Ga. 448, 461, 697 S.E.2d 166, 176 (2010) (citing O.C.G.A. § 9-3-31) (Fraud).  Furthermore, the statutes of limitations are tolled until Jay, exercising reasonable diligence, would have discovered the conduct giving rise to the claims.  O.C.G.A. § 10-1-625 (Franchise Act); *Pac. Harbor Capital, Inc. v. Barnett Bank, N.A.*, 252 F.3d 1246, 1251 (11th Cir. 2001) (RICO); *Hamburger v. PFM Capital Mgmt., Inc.*, 286 Ga.

App. 382, 387-88 & n. 21, 649 S.E.2d 779, 784 & n.21 (2007) (Fraud).   Moreover, dismissal of a claim "on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred." *Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1288 (11th Cir. 2005) (internal quotation marks omitted).

Jay filed its original Complaint in this action on July 28, 2011.  Notice of Removal Attach. 1, Complaint, ECF No. 1-1, at 5 of 17.   Jay alleges that it did not know and could not have known ASMC's representations were false at the time they were made.   Am. Compl. ¶ 15.   Further, Jay states that it did not become aware that the sales numbers had been falsely reported until December 2, 2009.  *Id.* ¶¶ 34-35.   Therefore, it is not apparent from the face of the Amended Complaint that the claims asserted against ASMC are barred by the statute of limitations. The Court hastens to add, however, that its ruling does not mean that ASMC may not eventually prevail on its statute of limitations defenses, but at this stage of the proceedings, the Court cannot find that Jay's claims should be dismissed based on the statute of limitations.

CONCLUSION

As previously explained, the Court denies ASMC's Motion to Dismiss (ECF No. 9).   The stay in this action is hereby lifted. The parties shall submit a joint proposed scheduling discovery

29

order, consistent with the Court's order dated October 5, 2011 (ECF No. 6), by March 9, 2012.

IT IS SO ORDERED, this 9th day of February, 2012.


s/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE